# Exhibit A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PROTECTIVE LIFE INSURANCE
COMPANY,

                              Plaintiff,

         v.                                      C.A. No. 20-cv-2101

WELLS FARGO BANK, N.A., as
securities intermediary,

                              Defendant.

## COMPLAINT

Plaintiff, Protective Life Insurance Company ("Protective Life"), files and

asserts its Complaint against Defendant, Wells Fargo Bank, N.A., ("Wells Fargo"),

as securities intermediary, and in support thereof, alleges as follows:

## PARTIES

1.      Protective Life is a life insurance company organized and existing

under the laws of Tennessee, with its principal place of business at 2801 US-280,

Birmingham, AL 35223.  Protective Life is a citizen of the states of Alabama and

Tennessee.

2.      Upon information and belief, Wells Fargo is a national banking

association with its principal place of business in Sioux Falls, South Dakota.  Wells

Fargo is being named solely in its capacity as securities intermediary.

## **JURISDICTION AND VENUE**

3.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Protective Life, a citizen of Tennessee and Alabama, and Wells Fargo, a citizen of South Dakota, and because the amount in controversy exceeds $75,000.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because the defendant, for venue purposes, resides in the District of Columbia.

## **FACTS COMMON TO ALL CLAIMS**

**A.      The Application for and Issuance of a $2 Million Life Insurance Policy**

5.      As early as April 2005, Empire General Life Assurance Corporation ("Empire Life") began receiving inquiries regarding a potential $2 million life insurance policy on the life of Nelson Deckelbaum.

6.      On or about September 8, 2005, Empire Life received an "Application for Life Insurance" (the "Application") seeking to insure the life of Mr. Deckelbaum. A copy of the Application is attached as Exhibit A.

7.      The Application sought a $5 million life insurance policy, naming The Nelson Deckelbaum 2005 Insurance Trust dated September 6, 2005 (the "Trust") as the "owner" and "beneficiary." *Id.* at 1.

8.      The Application disclosed Mr. Deckelbaum's place of residence as Washington, D.C.  *Id.*

2

9. The Application identified the Trust as having a physical address at 1100 N. Market Street, Wilmington, DE 19890, and acting at the direction of a Delaware trustee, Wilmington Trust Company, also physically located in Delaware. *Id.* at 1, 4.

10. The Application represented that the Policy's purpose was for Mr. Deckelbaum's "Estate Planning." *Id.* at 6.

11. The Application was signed on September 6, 2005 in Wilmington, Delaware by Michele C. Harra, an officer of Wilmington Trust Company, as trustee of the Trust (the prospective owner); by the insured, Mr. Deckelbaum; and by two insurance brokers, Alan Meltzer and Margaret Lyon. *Id.* at 6.

12. The Application declared that the statements and answers in the Application were full, complete, and true to the best of the signatories' knowledge and belief. *Id.* at 4.

13. Thus, in completing the Application, the signatories knew that they were required to provide truthful, accurate, and full responses to the questions presented. Furthermore, they knew that Empire Life would rely upon the statements recorded on the Application in determining whether to issue a policy with the face amount requested, or whether to issue a policy at all.

14. Soon thereafter, the application was amended seeking a face amount of $2 million. A copy of the Amendment is attached as Exhibit B.

3

15.     In reliance upon the representations contained in the Application and other documents and information submitted to Empire Life in connection with the Application, Empire Life issued a policy with a $2 million death benefit (policy number E00478564) (the "Policy") with an issue date of September 26, 2005.

16.     In January 2007, Empire Life merged into Protective Life.  Under the merger, Protective Life assumed Empire Life's insurance policies.

17.     On November 30, 2007, Protective Life received and processed an ownership and beneficiary change request to change the owner and beneficiary of the Policy to an entity known as CSSEL Bare Trust with Wells Fargo Delaware Trust Company as trustee.

18.     On or about February 12, 2008, Protective Life received and processed another ownership and beneficiary change request to change the owner and beneficiary of the Policy to an entity known as Life Settlement Funds Limited Trust with Bank of New York as trustee.

19.     On or about April 5, 2011, Protective Life received and processed another ownership and beneficiary change request to change the owner and beneficiary of the Policy to Wells Fargo Bank, N.A., as securities intermediary. Wells Fargo is the record current owner and beneficiary of the Policy on behalf of the Policy's beneficial owner, whose identity is unknown to Protective Life.

20.    Upon information and belief, Mr. Deckelbaum passed away on December 27, 2019, and Wells Fargo subsequently submitted a claim for the Policy's death benefit on behalf of its unidentified investor principal.

**B.    The Policy was Procured as Part of an Illegal Wagering Scheme to Gamble on the Life of Mr. Deckelbaum**

21.    Following receipt of notice of Mr. Deckelbaum's death, Protective Life commenced a review of the Policy and has determined, on information and belief, that the Policy was at all times material hereto meant as an illegal wager on the life of Mr. Deckelbaum.  Protective Life has further determined, on information and belief, that the Policy lacked an insurable interest prior to and at its inception and that any appearance of insurable interest was superficial only and was in reality a complete and total sham designed to conceal the true wagering nature of the purported Policy.

22.    Protective Life has further determined, upon information and belief, that the Trust itself was an illegal sham created to give the false appearance of a valid insurance trust established for valid "Estate Planning," and thus to give the superficial—but entirely false—appearance of a legitimate insurable interest.

23.    Moreover, upon information and belief, the funds used to pay the premiums on the Policy were provided—not by Mr. Decklebaum or his family—but rather by a third party investor known as Coventry, a stranger originated life insurance ("STOLI") funder that used insureds during the relevant time periods as

instrumentalities to create multi-million dollar life insurance policies—not for the benefit of the insureds or their families—but rather for the benefit of investors.  Upon information and belief, Coventry or a Coventry-related entity and/or other persons or entities who lacked an insurable interest in Mr. Deckelbaum's life and were participating in a wager on his life and sought to profit from his death.  Upon information and belief, persons who coordinated and associated with Coventry in procuring the Policy include Ms. Lyon, one of the soliciting agents who signed the Application, and her firm CBI Financial.

24.     Upon information and belief, to disguise the true wagering nature of the Policy, the stranger entities, acting together to generate the Policy, knowingly and intentionally misrepresented material information and affirmatively concealed material information from Protective Life so as to intentionally mislead and induce Protective Life into issuing a policy that it otherwise would have rejected.  Upon information and belief, and among other things, this included:

a. Falsely representing that the Trust was established for a legitimate purpose.
Instead, upon information and belief, the Trust was established solely for the purpose of making an illegal wager on the life of Mr. Deckelbaum in violation of applicable Delaware law.  The Trust furthered this unlawful scheme by (1) giving the appearance of a valid Delaware statutory trust and (2) acting as the owner and beneficiary of the Policy so as to conceal that the real owner in

interest, the real beneficiary in interest, and the real payor of premiums was a stranger to Mr. Deckelbaum. In reality, the Trust was a sham, and the stranger entities acting together to generate the Policy concealed the truth from Protective Life.

b.  Upon information and belief, the premiums were paid by Coventry and its associates pursuant to the terms of a non-recourse premium financing agreement. Upon information and belief, at no point did the Trust or Mr. Deckelbaum provide any of the ultimate funding for the premium payments, and this fact was intentionally withheld from Protective Life.

c.  Falsely declaring in the Application that the Policy would be used for Mr. Deckelbaum's "Estate Planning." In fact, the Policy was never meant to serve as "Estate Planning" for Mr. Deckelbaum but was always intended to benefit stranger-investors who sought to use the Policy as an instrumentality to illegally wager on Mr. Deckelbaum's life.

d.  Falsely declaring in the Application that the "statements and answers made in all parts of this application [were] full, complete, and true to the best of my (our) knowledge and belief." Instead, the stranger entities acting together to generate the Policy knew and intended for their statements, answers, and representations to be false and misleading, and otherwise concealed the truth from Protective Life.

7

25.     Upon information and belief, as part of the illegal wagering scheme, the stranger entities acting together to generate the Policy misrepresented and otherwise concealed from Protective Life that, from the outset, the Policy was intended to be transferred to a different owner with no insurable interest in the insured.

26.     The identity of the true owner and beneficiary of the Policy was, therefore, continually concealed from Protective Life.

## FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT – ILLEGAL HUMAN LIFE WAGERING CONTRACT

## (AGAINST DEFENDANT WELLS FARGO BANK, N.A., AS SECURITIES INTERMEDIARY)

27.     Protective Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

28.     The Policy was applied for and signed in Delaware by a Delaware statutory trust, as owner and beneficiary of the Policy.  The Policy was issued for delivery to that Delaware statotury Trust, as owner, care of its Delaware corporate trustees at their address in Wilmngton, Delaware.  The Policy was then delivered to the trustee of the Trust, Wilmington Trust Company, a Delaware company with offices in Wilmington, Delaware who formally accepted the Policy at its offices in Wilmington, Delaware. The Policy is governed by Delaware law.

29.    The Delaware Constitution provides that "[a]ll forms of gambling are prohibited in this State except [those explicitly set forth in the statute]."  Del. Const. Art. II, § 17.  Moreover, the Delaware Supreme Court has addressed the issues associated with life insurance policies used to wager on the death of insureds and has held that, under Delaware law, such policies are mere wagering contracts and are void *ab initio*.  *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059 (Del. 2011).

30.    As set forth herein, the Policy was, from the outset, procured by third parties and intended as a wager on the life of Mr. Deckelbaum.  Whether Mr. Deckelbaum knew the details of this scheme or his identity was merely used as an instrumentality to procure the Policy, stranger investors were wagering on Mr. Deckelbaum's life and hoping to trigger a secondary market cash-in on the Policy's $2 million death benefit.

31.    Accordingly, Protective Life seeks, and is entitled to, a declaratory judgment that the Policy was an illegal wagering contract that violated the Delaware Constitution and the public policy of Delaware, thus rendering the Policy void *ab initio*, meaning that the Policy never came into existence.

## SECOND CAUSE OF ACTION

## DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

## (AGAINST DEFENDANT WELLS FARGO BANK, N.A., AS SECURITIES INTERMEDIARY)

32.　　Protective Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

33.　　The Policy was intentionally structured to be a "trust-owned insurance policy" as defined by Delaware's insurable interest statute, 18 Del. C. § 2704(e)(4). Because the Policy was delivered to the place of business of the trustee of the Trust, Wilmington Trust Company, at its offices in Wilmington, Delaware, the existence of an insurable interest "shall be governed by [Delaware's insurable interest statute] without regard to [the] insured's state of residency or location." 18 Del. C. § 2704(g).

34.　　Under Delaware law, a valid and legitimate insurance trust can have a valid insurable interest in the life of the insured. *See* Del. C. § 2704(c)(5).

35.　　However, because the Trust was an illegitimate cover for the wager on Mr. Deckelbaum's life, the Trust lacked any insurable interest in the life of Mr. Deckelbaum. Accordingly, no insurable interest existed at the time of issuance of the Policy, and the Policy is void *ab initio* for lack of insurable interest.

36.　　Additionally, the Policy was applied for and issued at the behest of individuals or entities—with no insurable interest in the life of the insured—who

procured the Policy for the purpose of benefitting stranger investors in the life insurance secondary market. Accordingly, the Policy is void *ab initio* for lack of an insurable interest.

37. Therefore, Protective Life seeks, and is entitled to, a declaratory judgment that the Policy lacked insurable interest because it was procured by and for the benefit of strangers without any insurable interest under Delaware law.

38. WHEREFORE, Protective Life respectfully requests the entry of an Order by this Court as follows:

A. Declaring that the Policy is void *ab initio* due to it having been procured as a wagering contract on the life of Mr. Deckelbaum;

B. Declaring that the Policy is void *ab initio* due to it having been procured without a valid insurable interest at inception;

C. Declaring that because the Policy is void *ab initio* it never existed and Protective Life need not pay the death benefit;

D. Declaring that because the Policy is void *ab initio* the Court will leave the parties to this illegal contract as it finds them, thus permitting Protective Life to retain the premiums paid on the Policy, or, in the alternative, declaring that Protective Life may retain some of all of the premiums paid on the Policy to effectuate an offset with respect to Protective Life's costs and losses associated with the Policy;

E.     Awarding Protective Life attorneys' fees and costs associated with bringing this lawsuit, as determined by the Court; and

F.     Awarding Protective Life any further relief this Court deems appropriate.

Dated:  July 31, 2019                    Respectfully submitted,


                                         /s/ *Chad E. Kurtz*
                                         COZEN O'CONNOR
                                         Chad E. Kurtz (ID No. 1016934)
                                         1200 19th Street, NW
                                         3rd Floor
                                         Washington, D.C. 20036

                                         Michael J. Miller (*pro hac vice to be filed*)
                                         Joseph Kelleher (*pro hac vice to be filed*)
                                         Chase A. Howard (*pro hac vice to be filed*)
                                         1650 Market St., Suite 2800
                                         Philadelphia, PA 19103
                                         Tel. (215) 665-2147

                                         *Attorneys for Plaintiff,*
                                         *Protective Life Insurance Company*

# Exhibit A

**EG EMPIRE GENERAL**
LIFE ASSURANCE CORPORATION
P.O. BOX 310 • SHAWNEE MISSION, KS 66201

## APPLICATION FOR LIFE INSURANCE – PART I

### 1. PROPOSED INSURED 1

Name: Nelson Deckelbaum    Birth Date: 04/01/1929    State of Birth: DC    Sex: M    Social Security No: [redacted]    Marital Status: M

Occupation: Lawyer    Driver's License No. & State: DC    Home Phone No.: [redacted]    Work Phone No.: [redacted]

Home Address (Street Address-City, State, Zip): 4200 Massachusetts Ave, NW #115 Washington DC 20016

Employer's Name: Deckelbaum Owens + Raftery, 3 Bethesda Metro Center #200 Bethesda, MD 20814    Employer's Address    Years Employed

### 2. PROPOSED INSURED 2 – Relationship to Proposed Insured 1: _____

Name    Birth Date    State of Birth    Sex    Social Security No    Marital Status

Occupation    Driver's License No & State    Home Phone No    Work Phone No.

Home Address (Street Address-City, State, Zip)

Employer's Name    Employer's Address    Years Employed

### 3. OWNER INFORMATION (Complete if different from Proposed Insured)

☐ Applicant (Owner) if other than Proposed Insured 1 (Owner must sign Page 4)
☐ Payor (if other than Owner – furnish information in Remarks on Page 4)    9.6.2005

Name: The Nelson Deckelbaum 2005 Insurance Trust dtd    Relationship: Trust    Soc. Sec. No. or Tax I.D. No.: [redacted]

Address (Street Address - City, State, Zip): 1100 N. Market Street Wilmington, DE 19890

Home Phone No    Work Phone No    *All notices and reports will be sent to the Owner unless otherwise specified in Remarks*

### 4. BENEFICIARY DESIGNATION    If multiple beneficiaries named, shares will be divided equally among the surviving beneficiaries, unless otherwise specified.

Primary    Relationship    Contingent    Relationship

The Nelson Deckelbaum 2005 Insurance Trust dtd 9.6.2005

If trust, please provide effective date and Tax I.D. #

### 5. COVERAGE INFORMATION

PLAN OF INSURANCE: EG Advantage UL    Amount: $5,000,000    ☐ Select Preferred    ☒ Nonsmoker    ☐ Smoker

For ☒ Level Death Benefit    ☐ Increase Option _____    ☐ Preferred    ☐ Tobacco    ☐ Other
UL: ☐ Increasing Death Benefit    ☐ Other_____    ☐ Issue Special Class:_____

☐ Children's Term Rider _____ Units (complete #7 next page)    ☐ Accidental Death Benefit $_____
☐ Family Plan Rider _____ Units (complete #7 next page)    ☐ Waiver of Premium

☐ Monthly Disability Rider amount to be credited to policy $_____    ☐ Protected Insurability Rider $_____
☐ Covered Insured Rider (CIR) $_____ (#8 next page)    ☐ Other Rider _____

Guaranteed Insurability Rider(s): VO = Variable Option  SC = Survivor's Choice

| Amount(s) (VO or SC) | Option Date(s) (VO) | Designated Life(s) (SC) | Relationship (SC) |
|---|---|---|---|
| | | | |
| | | | |

### 6. BILLING INSTRUCTIONS

Premium: ☒ Annual ☐ Semi-annual ☐ Quarterly ☐ Monthly PAC ☐ Other _____ List Bill # _____

Cash with App. $ _____ Mode Premium $ 293,381 ☒ Initial Premium $ 293,381 Automatic Prem Loan? (if available) ☐ Yes

Advance Prem. Account of $ _____ for # of Years _____ Lump Sum/Pour In $_____

Premium has ☐ has not ☒ been provided with this application _____ (must be answered and initialed by applicant/owner)
(initial)
*See page 10 if CWA is being collected*

EG-700 (4/04)    1

**7. Family Members to be covered:**

| Name | Sex | Date of Birth | Relationship to Proposed Insured | State of Birth | Height | Weight |
|------|-----|---------------|----------------------------------|----------------|--------|--------|
| | | | | | | |
| | | | | | | |
| | | | | | | |

**8. Proposed Insured Under CIR** | **Beneficiary** | **Relationship**

If multiple beneficiaries named, shares will be divided equally among the surviving beneficiaries, unless otherwise specified.

**9. Life insurance in force: None ☐**

| Person | Company | Policy Number | Replace or Change? | Personal Coverage Amt. | Business Coverage Amt. | Year Issued |
|--------|---------|---------------|--------------------|------------------------|------------------------|-------------|
| Nelson Deckelbaum | Phoenix Mutual | 6501935 | | 11,750 | | 1985 |
| Nelson Deckelbaum | Phoenix Mutual | 6502892 | | | | 1996 |
| Nelson Deckelbaum | Mass Mutual Blue Chip | 9618619 | | | | 1995 |
| Nelson Deckelbaum | Provident | PC114705 | | | | 1971 |
| Nelson Deckelbaum | Provident | PC357621 | | | | 1978 |

**Regarding All Persons Proposed for Insurance:** (If any "yes", explain and give name of every company. Use Remarks section if additional space is needed.)

| | Prop Ins. 1 Yes No | Prop. Ins. 2 Yes No | Dependents Yes No |
|--|--|--|--|
| (a) Is the Policy applied for to replace or change any existing insurance or annuities in this or any other Company? Indicate in above chart. (If "yes", check which policy and complete comparison statement, if required.) | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (b) Has any person proposed for insurance an application pending in another company? (If "yes", give Person, Company and Amount in #14 below.) | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (c) Has any person proposed for insurance ever been rated up, declined or postponed for life or health insurance coverage? (details in #14 below) (If yes, do not submit CWA.) | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (d) Annual Income $ _____ Net Worth $ _____ | | | |

**10. Within the last 5 years, has anyone proposed for insurance used any form of tobacco or a nicotine substitute (patch, etc.)?**

☐ YES (Indicate usage below) If discontinued, date discontinued _____  ☒ NO

| Name | Cigarettes | Cigars | Other Tobacco (Identify) | Used within 60 mos (Y/N) | Used within 36 mos (Y/N) | Used within 12 mos (Y/N) | Quantity Used | Frequency used (day / month / year) |
|------|-----------|--------|--------------------------|--------------------------|--------------------------|--------------------------|---------------|-------------------------------------|
| | | | | | | | | |
| | | | | | | | | |

**11. Within the last 24 months has any Person Proposed for Insurance:**

| | Prop. Ins. 1 Yes No | Prop. Ins. 2 Yes No | Dependents Yes No |
|--|--|--|--|
| (a) Flown as a pilot, student pilot or crew member? (Complete questionnaire on page 8) | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (b) Are any such flights planned in the future? (Complete questionnaire on page 8) | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (c) Engaged in racing or scuba diving? (Complete questionnaire on page 8) | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (d) Engaged in ☐ hang gliding ☐ mountain climbing ☐ sky diving or other hazardous sport? (Complete Section 14) | ☐ ☒ | ☐ ☐ | ☐ ☐ |

**12. Has any Person Proposed for Insurance:** (If any "yes", give full details in Section 14)

| | Prop. Ins. 1 Yes No | Prop. Ins. 2 Yes No | Dependents Yes No |
|--|--|--|--|
| (a) Had any motor vehicle accidents, DUIs, DWIs, speeding tickets, or other traffic violations in the past 7 years? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (b) Been convicted of a felony in the past 10 years? | ☐ ☒ | ☐ ☐ | ☐ ☐ |

**13. Is any Person Proposed for Insurance:** (If any "Yes", give full details in Section 14)

| | Prop. Ins. 1 Yes No | Prop. Ins. 2 Yes No | Dependents Yes No |
|--|--|--|--|
| (a) ☐ a non U.S. citizen* or ☐ resides more than 6 months a year outside of the U.S. or Canada | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (b) Not a permanent resident of the U.S. or Canada? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (c) Traveled outside the U.S. or Canada within the past 3 years or inland to do so within the next 12 months? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| * Copy of Permanent VISA (Green Card) is required for all Foreign Nationals. | | | |

**14. Details to questions 9 - 13.** (Use remarks section if additional space is needed.)

| Person | Question | Date of Event | Details |
|--------|----------|---------------|---------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

EG-700 (4/04)

2

## PART 1A NON-MEDICAL DECLARATIONS

1. (a) Proposed Insured 1: Height **6'1"** Weight **225** ☐ Gain ☒ Loss in past year? _____ lbs.

   (b) Proposed Insured 2: Height _____ Weight _____ ☐ Gain ☐ Loss in past year? _____ lbs.

| 2. Within the past 10 years has any person proposed for insurance been treated or diagnosed by a physician as having: (Circle conditions to which "yes" answer applies and give details in number 5 below.) | Prop. Ins. 1 Yes No | Prop. Ins. 2 Yes No | Dependents Yes No |
|---|---|---|---|
| (a) Disorder of brain or spinal cord, paralysis, mental disorder, epilepsy, stroke, convulsions, chronic headaches | | ☐ ☐ | ☐ ☐ |
| (b) Asthma, bronchitis, emphysema, tuberculosis or other disorder of the lungs or respiratory system | | ☐ ☐ | ☐ ☐ |
| (c) High blood pressure, heart attack, heart murmur, chest pain or other disorder of the heart or blood vessels | | ☐ ☐ | ☐ ☐ |
| (d) Any disorder of the esophagus, stomach, intestines, liver or pancreas | | ☐ ☐ | ☐ ☐ |
| (e) Sugar or blood in the urine, chronic inflammation or other disorder of the kidneys | | ☐ ☐ | ☐ ☐ |
| (f) Cancer, tumor or disorder of the prostate or reproductive organs | | ☐ ☐ | ☐ ☐ |
| (g) Arthritis, osteoporosis or other disorder of the muscles, skin or bones including joints or spine | | ☐ ☐ | ☐ ☐ |
| (h) Diabetes, recurrent infections, enlarged lymph glands, anemia, excess fatigue or other disorders of the glandular or blood systems | | ☐ ☐ | ☐ ☐ |
| (i) State the specific date of last medical consultation (Must be answered if Part 1A completed) | | Mo. Day Yr | Mo. Day Yr |
| (j) Name of Personal Physician **Dr. Charles Rackley** | | | |
| Address of Personal Physician **3800 Reservoir Rd NW WASH, DC 20007** | | | |

| 3. Has any person proposed for insurance been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or "AIDS" related complex (ARC)? | Prop. Ins. 1 Yes No | Prop. Ins. 2 Yes No | Dependents Yes No |
|---|---|---|---|
| | | ☐ ☐ | ☐ ☐ |

| 4. Has any person proposed for insurance: (Circle conditions to which "yes" answer applies and give details in number 5 below.) | Prop. Ins. 1 Yes No | Prop. Ins. 2 Yes No | Dependents Yes No |
|---|---|---|---|
| (a) Other than above, had examination, treatment or consultation with a physician during the past 5 years? | | ☐ ☐ | ☐ ☐ |
| (b) Been on, or advised to be on any medication or prescribed diet? | | ☐ ☐ | ☐ ☐ |
| (c) Sought or been advised to seek advice or treatment, or been arrested for the use of drugs or alcohol? | | ☐ ☐ | ☐ ☐ |
| (d) Ever used narcotics, sedatives, depressants, stimulants or hallucinogens, other than under a doctor's prescription and direction? | | ☐ ☐ | ☐ ☐ |
| (e) Ever used marijuana, cocaine, or any illegal drug or been arrested for the possession of drugs? | | ☐ ☐ | ☐ ☐ |
| (f) Ever been or is currently a member of any alcohol or drug rehabilitation program? | | ☐ ☐ | ☐ ☐ |
| (g) Ever attempted suicide? | | ☐ ☐ | ☐ ☐ |
| (h) Had a parent, brother, or sister who had and/or died from cancer, diabetes, stroke, heart or kidney disease, or who committed suicide? (Please show age of onset and/or age death occurred.) | | ☐ ☐ | ☐ ☐ |

| 5. Person's Name | Question Number | Date of Diagnosis | Diagnosis - Medication Prescribed | Full Name and Complete Address of Attending Physician or Hospital |
|---|---|---|---|---|
| Mother | 4h | AGE 80 | Heart Attack | |
| | 2c | ? | Hypertension Hyphokesterolemia | Dr. Rackley |
| | 2G | 1/05 | Lumbar Laminectomy | Dr Cooney |
| | 2DF | 1983/84 | Cricoid Chondrosarcoma (surgically removed tumor) Tracheostomy Performed (still in place w/ Valve) | Dr Pearson, MD Mayo Clinic Rochester, NY |
| | 4A | 2002 2003 | Routine PE (Bld, Urine, EKG Colonoscopy) | Dr Rackley |
| | 4B | | Lipitor, Norvasc, Diovan | |

EG-700 (4/04)

3

Home Office Endorsements:

Remarks:

## DECLARATIONS

I (We) represent that all statements and answers made in all parts of this application are full, complete and true to the best of my (our) knowledge and belief. It is understood and agreed that:

(a) All such statements and answers shall be the basis of any insurance issued, and my (our) answers are material to the decision as to whether the risk is accepted by Empire General Life Assurance Corporation.

(b) No agent or medical examiner can make, alter or discharge any contract, accept risks, or waive Empire General's rights or requirements

(c) Acceptance of a policy by the Owner shall constitute ratification of any changes made by the Company under "Home Office Endorsements" above. In those states where it is required, changes as to the plan, amount, age at issue, classification or benefits will be made only with the Owner's written consent.

(d) No insurance shall take effect unless: (1) a policy is delivered to the Owner; (2) the full first premium is paid while the proposed insured(s) is (are) alive; and (3) there has been no change in health and insurability from that described in this application. However, if the premium is paid as set forth in the attached Conditional Receipt Agreement and the Conditional Receipt Agreement is delivered to the Owner, the terms of the Conditional Receipt Agreement shall apply. No agent or medical examiner has any authority to waive or to alter these terms and conditions or to bind coverage under any other circumstances.

(e) If applicable, I have reviewed the attached Conditional Receipt Agreement and understand and agree that it provides a limited amount of life insurance for a limited period of time, and that such coverage is subject to the terms and conditions set forth in the Conditional Receipt Agreement.

(f) The agent taking this application has made no statement or representation different from, contrary to or in addition to these Declarations and the terms and conditions of the attached Conditional Receipt Agreement.

### IMPORTANT INFORMATION ABOUT IDENTIFICATION INFORMATION

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information of its customers. We may ask for information or identifying documents that will allow us to verify the identity of our customers.

Any person who knowingly with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which may be a crime and may subject such person to criminal and civil penalties according to state law.

Signed At _Wilmington, DE_
(City and State)

Date _9/6/2005_

(X) _____
Proposed Insured 1 (Sign Name in Full)

☐ **Witness to All Signatures or
☐ Signature of Proposed Insured 1 only

(X) _____
Proposed Insured 2 (Sign Name in Full)

**Witness to Signature of Proposed Insured 2 only

(X) _____
Signature of Parent or Guardian   Wilmington Trust Co, Trustee

**Witness to Signature of Parent or Guardian Only

(X) _____
Applicant/Owner (Complete question 3)
Michele C. Harra
Financial Services Officer
Please Be Sure Question 3 is Complete

**Witness to Signature of Applicant/Owner Only

**Signature(s) should be witnessed by competent adult(s) who actually see the individual(s) sign the application

*If Owner is Corporation, Partnership or Trust, a Corporate Officer, Partner or the Trustee must sign and state title

EG-700 (4/04)                              4

**EMPIRE GENERAL LIFE ASSURANCE CORPORATION**
P.O. Box 310
Shawnee Mission, KS 66201

### AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

1.  This authorization to obtain and disclose information complies with HIPAA regulations as they relate to life insurance. I (we) authorize Empire General Life Assurance Corporation (Empire General) and its reinsurers to obtain and use any information about or relating to me (us) that may affect my (our) insurability. Empire General and its reinsurers may obtain and use health and medical information, including but not limited to information about drug use, alcohol use, nicotine use, physical and mental diseases and illness, and psychiatric disorders. Empire General and its reinsurers may also obtain and use non-health and non-medical information, including but not limited to financial information, credit reports, consumer reports, driving record, criminal record, and information about avocations and aviation activity. All of this information may be used to evaluate an application for insurance, a claim for insurance benefits, or both. Information relating to communicable diseases and other risk factors relating to me or to my spouse and life partner may be used to evaluate an application for insurance on either me or my spouse and life partner. The Empire General sales agent or regional sales office representing me on my (our) application for insurance may obtain the information described in this paragraph directly from any of the persons or organizations listed in paragraph 2 in order to expedite the delivery of the information to Empire General.

2.  I (we) authorize the following persons and organizations to release and disclose the information described in paragraph 1 to Empire General or its agents acting on its behalf: (i) my (our) doctor(s); (ii) medical practitioners; (iii) pharmacists and Pharmacy Benefit Managers; (iv) medical and related facilities, including hospitals, clinics, facilities run by the Veteran's Administration, Kaiser Permanente, The Cleveland Clinic Foundation and The Mayo Clinic; (v) insurers; (vi) reinsurers; (vii) Medical Information Bureau, Inc (MIB); (viii) my (our) current and previous employers; and (ix) commercial consumer reporting agencies (CRA). All of these persons and organizations other than MIB may release the information described above to a CRA acting for Empire General. MIB may not release the information described in paragraph 1 to a CRA

3.  I (we) authorize Empire General to draw and test my (our) blood, and/or oral fluids, and urine as may be necessary to obtain information to be used to underwrite my (our) application for insurance. These tests may include, but are not limited to, tests for cholesterol and related blood lipids, diabetes, liver or kidney disorders, immune disorders (other than HIV/AIDS; reference number 5 below), and the presence of drugs, nicotine, or their metabolites. This authorization does not include genetic testing. Unless otherwise required by law or regulation, Empire General may, but is not obligated to, release any of these test results directly to me or to my spouse and life partner

4.  I (we) authorize Empire General to release and disclose the information described in paragraphs 1 and 3 to its affiliates, its reinsurers, persons or organizations providing services relating to insurance underwriting for Empire General, MIB, and as otherwise required by law. Empire General may release and disclose the information described in paragraphs 1 and 3 to other insurers if I (we) have applied or apply to the other insurers for insurance. Empire General may release and disclose the information described in paragraphs 1 and 3 to the sales agent representing me on my (our) application for insurance if it is necessary to provide an explanation of the reasons for Empire General's decision to impose special underwriting requirements, whenever my application cannot be approved as submitted, or in connection with a claim for benefits

5.  **SPECIAL REQUIREMENT FOR HIV/AIDS TESTING.** If Empire General intends to test for the presence of antibodies to the Human Immunodeficiency Virus (HIV), which is the virus that has been associated with Acquired Immune Deficiency Syndrome (AIDS), Empire General may require me (us) to authorize that testing separately. I (we) hereby authorize Empire General to obtain and use the results of any HIV tests that I (we) separately authorize, and if permitted by law, to disclose the results of those tests to its reinsurers and MIB

6.  This authorization shall be valid for 24 months from the date shown below or, in the event of a claim for benefits, for the duration of such claim.

7.  During the evaluation of my (our) insurance application, I (we) understand that I (we) have the right to revoke the authorizations in paragraphs 1 through 5 by writing to Empire General at P.O. Box 310, Shawnee Mission, KS 66201 if this authorization is revoked, this would result in the file being closed and no coverage provided.

8.  ☐ I (we) have been given a copy of this authorization form and Empire General's Description of Information Practices

    ☐ I (we) would like to be interviewed if an investigative consumer report will be made.
    *(Please check the box if you wish to be interviewed if an investigative consumer report will be made.)*

    ☐ If performed, I (we) would like copies of my (our) blood profile test results.

9.  I (we) understand that information about me (us) may be disclosed under this authorization to persons or organizations that are not subject to the Health Insurance Portability and Accountability Act (HIPAA) and that the information would then no longer be protected by HIPAA and any related regulations

    *I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct any physician, health care professional, hospital, clinic, medical facility, or other health care provider to release and disclose my entire medical record without restriction. Any modifications to this authorization may preclude our ability to process this application*

10. I understand I do not have to sign this authorization in order to obtain health care benefits (treatment, payment or enrollment)

---

Proposed Insured 1 (Signature)

Print Name  *Nelson Deckelbaum*

Date of Authorization: 9/6/05
When applicable, print name(s) of minor(s) below:

---

Proposed Insured 2 (Signature)

Print Name

---

Parent or Legal Guardian (Signature)

**THIS AUTHORIZATION MUST BE SIGNED WITHOUT MODIFICATION BEFORE THE APPLICATION CAN BE PROCESSED. PLEASE RETURN THIS AUTHORIZATION WITH THE APPLICATION.**

**AGENT'S REPORT**

| | |
|---|---|
| 1. Did you personally interview Proposed Insured(s) and complete application in his and/or her presence?   ☒ Yes  ☐ No<br>If "no", please explain. | 3. Has medical examination been ordered?  ☐ Yes  ☒ No<br>Name of examiner: _____  Date of exam: _____ |
| | 4. If application is for UL and taken in a Non-NAIC state, have you completed UL Disclosure Form? ☐ Yes  ☐ No |
| 2. (a.) Will this policy replace or change existing policy(ies)?<br>☐ Yes  ☒ No | 5. Are you related to the Proposed Insured(s)? ☐ Yes  ☒ No<br>If yes, what is your relationship? _____ |
| (b.) If replacement of existing insurance is involved, have you complied with all relevant state requirements, including any "Disclosure and Comparison Statements"?  ☐ Yes  ☐ No<br>If "no", please explain. | 6. Have you represented the Proposed Insured(s) on prior insurance applications to other life insurance companies?<br>☒ Yes  ☐ No |
| Answer questions (c.) and (d.) *only* if this is a replacement:<br><br>(c.) Did you use any pre-printed Company approved sales materials?  ☐ Yes  ☐ No<br>If yes, list name or form # here: _____ | 7. Are you aware of any known history of excessive use of alcohol, use of drugs, D.U.I.'s, medical history or any other facts which would assist us in evaluating this risk. Include details of prior insurance transactions which resulted in substandard offers, postponements or decline actions?<br>If yes, please list in separate note.   ☐ Yes  ☒ No |
| | 8. How long have you known Proposed Insured(s)?<br>15 yrs + |
| (d.) Did you use any Company approved, electronically generated, individualized sales materials (such as illustrations or concept materials)?  ☐ Yes  ☐ No<br>If yes, you must provide a copy of these materials with the application. | 9. Purpose For Coverage:<br>☐ Buy/Sell  ☒ Estate Planning  ☐ Key Person<br>☐ Income Replacement  ☐ Creditor  ☐ Other _____ |

I hereby certify that all statements and answers made in this Agent's Report are full, complete and true to the best of my knowledge and belief and that I know nothing affecting the insurability of the Proposed Insured(s) which is not fully set forth in these papers.

*I have verified the identity of the Owner by picture I. D. Identification type:* _____

| | | | |
|---|---|---|---|
| Signed at          (City and State)<br>Wilmington, DE | | Date<br>9/6/05 | |
| 1. Soliciting Agent's Printed Name<br>Alan Meltzer | Agent's Number (EG) | Percentage<br>50% | Phone No.<br>301-581-7300 |
| Soliciting Agent's *Signature* | Address<br>6500 Rock Spring Dr #500<br>Bethesda, MD 20817 | | |
| 2. Soliciting Agent's Printed Name<br>CBI Financial<br>Margaret S. Lyon | Agent's Number (EG)<br>179 1557 | Percentage<br>50% | Phone No<br>215-836-8304 |
| Soliciting Agent's *Signature*<br>Margaret S. Lyon | Address<br>4930-C York Road #321 (PO Box 2000)<br>Buckingham, PA 18912  attn: Meredith McMahon | | |
| 3. Soliciting Agent's Printed Name | Agent's Number (EG) | Percentage | Phone No. |
| Soliciting Agent's *Signature* | Address | | |
| Brokerage General Agency | BGA Number (EG) | Phone No. / Fax No. / E-mail | |

**SPECIAL REQUESTS/REMARKS:**

RECEIVED
SEP ... 200...
EMPIRE GENERAL LIFE
ASSURANCE CORPORATION

EG-700 (4/04)                                             6



Proposed Insured **Nelson Deckelbaum**

**EG**
**EMPIRE GENERAL**
LIFE ASSURANCE CORPORATION
P.O. BOX 310 • SHAWNEE MISSION, KS 66201

## CONFIDENTIAL PERSONAL FINANCIAL STATEMENT

*This form should be completed on any application when the amount applied for or in-force with Empire General
is $500,000 or more; or it will help expedite this application.*

**For a business financial statement, submit the actual and most current financial statement(s) for the business.**

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash | $ | Mortgages – home | $ |
| Real Estate — home | $ | – other | $ |
| — other | $ | Secured loans | $ |
| Business Equity | $ | Personal loans | $ |
| Business(es) considered as investment(s) | $ | Accounts payable | $ |
| | | Taxes payable | $ |
| Stocks and bonds | $ | Other loans (give details) | $ |
| Personal | $ | | |
| Notes Receivable | $ | Total liabilities | $ |
| Cash Surrender Value - Life Insurance | $ | Net worth | $ |
| Vested Balances - Retirement Accounts | $ | | |
| Total Assets | $ | | |

**EARNED INCOME** — (Income, before taxes, including salaries, fees, commissions, bonuses, and wages which are received as a result of active employment.)

| | Last Year | Prior Year |
|---|---|---|
| Salary or draw | $ | $ |
| Bonus(es) | $ | $ |
| Share of profits left in business | $ | $ |
| Other earned income (give details) | $ | $ |
| | $ | $ |
| Total | $ | $ |

**UNEARNED INCOME** — (Income, before taxes, such as rental, investment or other income that will continue despite a period of disability.)

| | Last Year | Prior Year |
|---|---|---|
| Dividend and interest income | $ | $ |
| Net real estate income | $ | $ |
| Income from business(es) considered as investment(s) | $ | $ |
| Other investment income (give details) | $ | $ |
| Total | $ | $ |

There are no suits pending nor judgments against me at this time except: _____

_____

Have you executed a will? _____

Have you personally guaranteed a debt owed by another party? (If so, please give details on Page 4.)

The above financial disclosures are made for the purpose of establishing insurability in connection with my pending Insurance Application.

They are furnished as a true and accurate statement of my financial condition on _____ , _____

_____          _____
Date                                             Signature of Proposed Insured

**Please use Page 4 if additional information is necessary.**

EG-700 (4/04)                                              7

**EMPIRE GENERAL LIFE ASSURANCE CORPORATION P.O. BOX 310 SHAWNEE MISSION, KS 66201**

Name of Proposed Insured (Please Print): Nelson Deckelbaum

## AVIATION QUESTIONNAIRE

| | |
|---|---|
| 1. Purpose of present and future flying:<br>☐ Pleasure ☐ Student Instruction ☐ Racing<br>☐ Commercial ☐ Charters ☐ Aerobatic Flight<br>☐ Military ☐ Test Flying ☐ Stunt Flying<br>☐ Business ☐ Cropdusting (☐ Ag Plane, ☐ Other) | 3. Type of aircraft (i.e., glider, jet, single engine, experimental, ultralight, etc.): |
| | 4. Total number of solo hours: |
| | 5. Total number of hours flown per year: |
| | 6. Ever had an aviation accident or violation? ☐ Yes ☐ No |
| 2. Type of license currently held:<br>☐ Student ☐ ATR<br>☐ Private ☐ IFR<br>☐ Commercial | 7. Any flights planned over inaccessible or remote areas?<br>☐ Yes ☐ No |
| | 8. If aviation requires an extra premium or exclusion rider, which would you prefer? ☐ Extra Premium ☐ Exclusion Rider |

## SCUBA DIVING QUESTIONNAIRE

| | | | |
|---|---|---|---|
| 1. Do you dive for pleasure? ☐ Yes ☐ No<br>Or commercial purposes? ☐ Yes ☐ No | | 5. Do you engage in:<br>☐ ice ☐ cave or ☐ night diving?<br>☐ search or ☐ rescue work?<br>☐ salvage? | 8. Do you dive alone?<br>☐ Yes ☐ No<br>If yes, how often? |
| 2. Diving History | Last 24 Months | 6. (a) What are the locations of your diving activities?<br>☐ Lakes<br>☐ Rivers<br>☐ Pools<br>☐ Ocean Beaches<br>☐ Deep Sea<br>☐ Other (Specify)<br>(b) How long have you been diving? | (a) Are you a certified diver?<br>☐ Yes ☐ No<br>Level of certification:<br><br>Date of last certification: |
| | No. of Dives / Average Time | | |
| Less than 50 feet | | | |
| 50-75 feet | | | (b) Are you a member of an organized club? ☐ Yes ☐ No<br>If yes, give details: |
| 76-100 feet | | | |
| 101-130 feet | | | |
| 131-150 feet | | | |
| 3. How many dives do you plan to make in the next 12 months? | | 7. Will you use mixed gas equipment?<br>(Nitrox, Trimix, Heliox, etc.)<br>☐ Yes ☐ No<br>If so, how often? | 9. Have you ever been treated for decompression sickness or arterial gas embolism?<br>☐ Yes ☐ No |
| 4. Date of your last dive: | | | |

## RACING QUESTIONNAIRE

| | |
|---|---|
| 1. Racing vehicle:<br>☐ automobile ☐ snowmobile<br>☐ motorcycle ☐ boat | 4. What type of fuel is used? |
| 2. Maximum speed attained:<br>Engine size: | 5. Racing Class:<br>☐ amateur<br>☐ professional |
| 3. What specific types of competition do you engage in?<br>(Examples: Midget, Sports Car, Stock Car, Drag, Sprint, Cross Country, etc.) | 6. Racing Association: (Examples:<br>NASCAR, IMSA, SCCA, etc.) |

All statements and answers to the above questions have been correctly recorded. They are complete and true to the best of my knowledge and belief.

Signed at _____ Date: _____

(City & State)

Witness _____ _____

(Signature of Proposed Insured)

EG-700 (4/04)                                    8

## Empire General Life Assurance Corporation
P.O. Box 310
Shawnee Mission, KS 66201

## Conditional Receipt Agreement

This agreement provides only a limited amount of insurance, for a limited period of time, and then only if all the terms and conditions of this agreement are met. No Agent of the Company can alter or waive any of the provisions of this Agreement. No life insurance is provided under the terms of this document in the event of the death of the Insured by suicide. In the event of suicide, the Company's sole liability will be the return of any money received.

**Received:** ☐ Check in the amount of $_____
☐ Pre-Authorized Funds Withdrawal Plan (PAW), ☐ Assignment/Transfer of Ownership for Section 1035 Exchange (1035) from _____ as conditional payment of the first premium for an insurance policy on the life of Proposed Insured(s) _____

An application for life insurance on each person proposed for insurance is being made today to Empire General Life Assurance Corporation. This conditional payment is received under and is subject to the exact conditions set out below, all of which are a part of this Agreement.

**ALL PREMIUM CHECKS MUST BE MADE PAYABLE TO EMPIRE GENERAL LIFE ASSURANCE CORPORATION. DO NOT MAKE CHECKS PAYABLE TO THE AGENT OR LEAVE THE PAYEE BLANK. MONEY ORDERS, CASHIER CHECKS, OR AGENT CHECKS OR OTHER CASH EQUIVALENTS WILL NOT BE ACCEPTED.**

> NOTE: Premium may not be collected where the face amount applied for on this application plus any in force Empire General policies on this Insured exceeds $1,000,000 or on Proposed Insureds under 15 days of age or over age 80.

**CONDITIONS UNDER WHICH INSURANCE MAY BECOME EFFECTIVE PRIOR TO POLICY DELIVERY**
Unless each and every condition below has been fulfilled exactly, no insurance will become effective prior to policy delivery to the Owner.
- (A) on the Effective Date the Proposed Insured(s) is (are) insurable exactly as applied for under the Company's printed underwriting rules for the plan, amount and premium rate class applied for;
- (B) that the amount paid with the application and shown above is equal to the first full modal premium for the premium rate class applied for; and
- (C) the Proposed Insured(s) has/have completed all examinations and/or tests requested by the Company.

**EFFECTIVE DATE OF COVERAGE**
Insurance issued based on the application will take effect on the latest of:
- (A) the date of the application;
- (B) the date requested in the application; or
- (C) the date of the last of any medical examinations or tests required under the rules and practices of the Company.

**AMOUNT OF COVERAGE - $1,000,000 MAXIMUM**
The total amount of insurance which may become effective prior to delivery of the policy to the Owner **shall not exceed $1,000,000.** This amount includes other life insurance and accidental death benefits then in force or applied for with this Company.

**TERMINATION AND REFUND OF PREMIUM**
There shall be no insurance coverage under this Agreement and this Agreement shall be void if:
- (A) premium payment is
  - (1) by check, and it is not honored by the drawee bank upon presentation;
  - (2) by PAW, and the deduction is not honored by the drawee bank; or
  - (3) by 1035 and the cash surrender value received from the assigned policy(s) is not equal to the first full modal premium for the premium rate class applied for.
- (B) if the application to which this Agreement was attached is not approved as applied for by the Company within ninety days from its date, the Company's only liability in such event(s) will be to return any money received.

The Company's only liability in such event(s) will be to return any money received.

**NOTICE TO APPLICANT:** You should retain a copy of this Agreement. The Original will be retained by Empire General.

Date:_____     Agent:_____

Date: _9.6.2005_____     Applicant/Owner:_____    Michele C. Harra
                                                                   Financial Services Officer

ORIGINAL - HOME OFFICE     COPY - APPLICANT
                            Wilmington Trust Company, Trustee

EG-700 (4/04)                              10

## EMPIRE GENERAL LIFE ASSURANCE CORPORATION
## NOTICE AND CONSENT FOR AIDS VIRUS (HIV) TESTING

Acquired Immunodeficiency Syndrome (AIDS) is a life-threatening disorder of the immune system, caused by a virus, HIV The virus is transmitted by sexual contact with an infected person, from an infected mother to her newborn infant, or by exposure to infected blood (as in needle sharing during IV drug use). Persons at high risk of contracting AIDS include males who have had sexual contact with another man, intravenous drug users, hemophiliacs, and sexual contacts with any of these persons AIDS does not typically develop until a person has been infected with HIV for several years A person may remain free of symptoms for years after becoming infected. Infected persons have a 25 percent to 50 percent chance of developing AIDS over the next 20 years Symptoms which may develop include fever (including night sweats), weight loss, swollen lymph glands, fatigue, diarrhea and white spots or unusual blemishes in the mouth

1. PURPOSE OF THE HIV TEST To evaluate your insurability, the Insurer named above, Empire General Life Assurance Corporation, has requested that you provide a sample of your blood, urine or other body fluids for testing and analysis to determine the presence of human immunodeficiency virus (HIV) antibodies or antigens This is not a test for AIDS; AIDS can only be diagnosed by medical evaluation.

2. PRE-TEST COUNSELING. Many public health organizations have recommended that before taking an AIDS-related test, a person seek counseling to become informed concerning the implications of such a test.

3. METHOD AND ACCURACY OF THE HIV TEST. The HIV antibody test that is to be performed is actually a series of tests done by a medically accepted procedure Your blood, urine or other body fluids sample will first be subjected to a test known as ELISA (enzyme-linked immunosorbent assay). If the result of this test is positive, the ELISA test will be repeated If this repeat ELISA test is also positive your blood, urine or other body fluids specimen will then be subjected to another, more specific technique called the Western blot test, for confirmation. Your test result is considered positive only after positive results are obtained on two ELISA tests and a Western Blot test.

   The HIV antibody test is extremely accurate. However, in rare instances the test may be positive in persons who are not infected with the virus (a false positive) This may include persons who have not engaged in high risk behavior. These individuals are encouraged to seek retesting to help confirm the validity of the positive test Additionally, the test may occasionally be negative in persons who are infected with HIV (a false negative) especially when the infection occurred recently; it takes at least 4-12 weeks for a positive test result to develop after a person is infected.

4. CONFIDENTIALITY OF HIV TEST RESULTS All test results will be treated confidentially They will be reported by the laboratory to the Insurer. When necessary for business reasons in connection with insurance you have or have applied for with the Insurer, the Insurer may disclose test results to others such as its affiliates, reinsurers, employees, or contractors. If the Insurer is a member of the Medical Information Bureau (MIB, Inc.) and if the test results for HIV antibodies/antigens are other than normal, the Insurer will report to the MIB, Inc. a generic code which signifies only a non-specific laboratory test abnormality If your HIV test is normal, no report will be made about it to the MIB, Inc. Other test results may be reported to the MIB, Inc In a more specific manner. The organizations described in this paragraph may maintain the test results in a file or data bank There will be no other disclosure of test results or even that the tests have been done except as may be required or permitted by law or as authorized by you.

5. POSITIVE TEST RESULTS. Positive HIV antibody/antigen test results do not mean that you have AIDS, but that you are at significantly increased risk of developing AIDS or AIDS-related conditions Federal authorities say that persons who are HIV antibody/antigen positive should be considered infected with the AIDS virus and capable of infecting others.

   Positive HIV antibody or antigen test results or other significant laboratory test abnormalities will adversely affect your application for insurance. This means that your application may be declined, that an increased premium may be charged, or that other policy changes may be necessary.

6. NOTIFICATION OF HIV TEST RESULTS. If the test results are negative, no routine notification will be sent to you. Positive or indeterminate test results will be provided to the private physician you indicate below:

_____    _____
Physician's Name                    Physician's Address

In absence of a designated physician, positive or indeterminate test results will be communicated in accordance with the rules of your state Some states will require notification of positive or indeterminate test results to the local health department in addition to or in lieu of notification to your private physician

CONSENT:
I have read and I understand this Notice and Consent for HIV (AIDS)-Related Testing and the accompanying Informational pamphlet entitled *HIV & AIDS Get The Facts* I voluntarily consent to testing and disclosure as described above. I understand that I have the right to withdraw this consent prior to being tested and that I may request and receive a copy of this form. A photocopy of this form will be as valid as the original.

Nelson Deckelbaum                              4 | 1 | 28
_____    _____
Proposed Insured (PRINT)                       Date of Birth

_____    9 | 6 | 05      DC
Signature of Proposed                Date          State of Residence
Insured or Parent/Guardian

EG-422-DE 5/00

**EMPIRE GENERAL LIFE ASSURANCE CORPORATION**
P.O. Box 310
Shawnee Mission, KS 66201
1-800-688-3518

### NOTICE REGARDING REPLACEMENT

### REPLACING YOUR LIFE INSURANCE POLICY OR ANNUITY?

Are you thinking about buying a new life insurance policy or annuity and discontinuing or changing an existing one? If you are, your decision could be a good one – or a mistake. You will not know for sure unless you make a careful comparison of your existing benefits and the proposed benefits.

Make sure you understand the facts. You should ask the company or agent that sold you your existing policy to give you information about it.

Hear both sides before you decide. This way you can be sure you are making a decision that is in your best interest

We are required by law to notify your existing company that you may be replacing your policy

You are urged not to take action to terminate, assign or alter your existing policy until your new policy has been issued and you have examined it and found it acceptable.

| | | |
|---|---|---|
| Applicant's Signature | 9.6.2005 | Agent's Signature |
| **Michele C. Harra** | Date | |
| **Financial Services Officer** | | |
| Wilmington Trust Company, Trustee | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### POLICY INFORMATION SHEET
### FOR EXISTING INSURANCE

Name of Applicant _____    D.O.B. _____

Address _____

Proposed Insured if other than Applicant _____

Application Number of Proposed Insurance _____

The following policy(ies) may be replaced as a result of this transaction:

| POLICY INFORMATION | POLICY INFORMATION |
|---|---|
| Insurer _____ | Insurer _____ |
| Policy Generic Name _____ | Policy Generic Name _____ |
| Policy Number _____ | Policy Number _____ |

| POLICY INFORMATION | POLICY INFORMATION |
|---|---|
| Insurer _____ | Insurer _____ |
| Policy Generic Name _____ | Policy Generic Name _____ |
| Policy Number _____ | Policy Number _____ |

EG-2043

Original - Insurance Company's
Copy - Proposed Insured's

## EMPIRE GENERAL LIFE ASSURANCE CORPORATION
### P.O. Box 310
### Shawnee Mission, KS 66201
#### AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

1  This authorization to obtain and disclose information complies with HIPAA regulations as they relate to life insurance. I (we) authorize Empire General Life Assurance Corporation (Empire General) and its reinsurers to obtain and use any information about or relating to me (us) that may affect my (our) insurability. Empire General and its reinsurers may obtain and use health and medical information, including but not limited to information about drug use, alcohol use, nicotine use, physical and mental diseases and illness, and psychiatric disorders. Empire General and its reinsurers may also obtain and use non-health and non-medical information, including but not limited to financial information, credit reports, consumer reports, driving record, criminal record, and information about avocations and aviation activity. All of this information may be used to evaluate an application for insurance, a claim for insurance benefits, or both. Information relating to communicable diseases and other risk factors relating to me or to my spouse and life partner may be used to evaluate an application for insurance on either me or my spouse and life partner. The Empire General sales agent or regional sales office representing me on my (our) application for insurance may obtain the information described in this paragraph directly from any of the persons or organizations listed in paragraph 2 in order to expedite the delivery of the information to Empire General.

2  I (we) authorize the following persons and organizations to release and disclose the information described in paragraph 1 to Empire General or its agents acting on its behalf: (i) my (our) doctor(s); (ii) medical practitioners; (iii) pharmacists and Pharmacy Benefit Managers; (iv) medical and related facilities, including hospitals, clinics, facilities run by the Veteran's Administration, Kaiser Permanente, The Cleveland Clinic Foundation and The Mayo Clinic; (v) insurers; (vi) reinsurers; (vii) Medical Information Bureau, Inc. (MIB); (viii) my (our) current and previous employers; and (ix) commercial consumer reporting agencies (CRA). All of these persons and organizations other than MIB may release the information described above to a CRA acting for Empire General. MIB may not release the information described in paragraph 1 to a CRA.

3  I (we) authorize Empire General to draw and test my (our) blood, and/or oral fluids, and urine as may be necessary to obtain information to be used to underwrite my (our) application for insurance. These tests may include, but are not limited to, tests for cholesterol and related blood lipids, diabetes, liver or kidney disorders, immune disorders (other than HIV/AIDS; reference number 5 below), and the presence of drugs, nicotine, or their metabolites. This authorization does not include genetic testing. Unless otherwise required by law or regulation, Empire General may, but is not obligated to, release any of these test results directly to me or to my spouse and life partner.

4  I (we) authorize Empire General to release and disclose the information described in paragraphs 1 and 3 to its affiliates, its reinsurers, persons or organizations providing services relating to insurance underwriting for Empire General, MIB, and as otherwise required by law. Empire General may release and disclose the information described in paragraphs 1 and 3 to other insurers if I (we) have applied or apply to the other insurers for insurance. Empire General may release and disclose the information described in paragraphs 1 and 3 to the sales agent representing me on my (our) application for insurance if it is necessary to provide an explanation of the reasons for Empire General's decision to impose special underwriting requirements, whenever my application cannot be approved as submitted, or in connection with a claim for benefits

5  SPECIAL REQUIREMENT FOR HIV/AIDS TESTING. If Empire General intends to test for the presence of antibodies to the Human Immunodeficiency Virus (HIV), which is the virus that has been associated with Acquired Immune Deficiency Syndrome (AIDS), Empire General may require me (us) to authorize that testing separately. I (we) hereby authorize Empire General to obtain and use the results of any HIV tests that I (we) separately authorize, and if permitted by law, to disclose the results of those tests to its reinsurers and MIB

6  This authorization shall be valid for 24 months from the date shown below or, in the event of a claim for benefits, for the duration of such claim

7  During the evaluation of my (our) insurance application, I (we) understand that I (we) have the right to revoke the authorizations in paragraphs 1 through 5 by writing to Empire General at P.O. Box 310, Shawnee Mission, KS 66201 If this authorization is revoked, this would result in the file being closed and no coverage provided

8  ❑ I (we) have been given a copy of this authorization form and Empire General's Description of Information Practices

    ❑ I (we) would like to be interviewed if an investigative consumer report will be made
       *(Please check the box if you wish to be interviewed if an investigative consumer report will be made )*

    ❑ If performed, I (we) would like copies of my (our) blood profile test results.

9  I (we) understand that information about me (us) may be disclosed under this authorization to persons or organizations that are not subject to the Health Insurance Portability and Accountability Act (HIPAA) and that the information would then no longer be protected by HIPAA and any related regulations.

  *I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct any physician, health care professional, hospital, clinic, medical facility, or other health care provider to release and disclose my entire medical record without restriction Any modifications to this authorization may preclude our ability to process this application*

10  I understand I do not have to sign this authorization in order to obtain health care benefits (treatment, payment or enrollment).

Proposed Insured 1 (Signature)           Date of Authorization: 9/6/05
Print Name: Nelson Deckelbaum       When applicable, print name(s) of minor(s) below:

Proposed Insured 2 (Signature)

Print Name

Parent or Legal Guardian (Signature)

**THIS AUTHORIZATION MUST BE SIGNED WITHOUT MODIFICATION BEFORE THE APPLICATION CAN BE PROCESSED. PLEASE RETURN THIS AUTHORIZATION WITH THE APPLICATION.**

F-LAD-242 (EG) (4/04)

# Exhibit B

**EMPIRE GENERAL LIFE ASSURANCE CORPORATION / PO BOX 310 / SHAWNEE MISSION, KS  66201**

**AMENDMENT TO APPLICATION WITH HEALTH STATEMENT**

**NAME OF INSURED**: NELSON DECKELBAUM                    **POLICY NUMBER**: 00468574

The application to EMPIRE GENERAL LIFE ASSURANCE CORPORATION for the policy named above is hereby amended by the undersigned to conform in every respect to any and all changes indicated below:

| Amount of Insurance: | Plan of Insurance: | Premium Payable |
|---|---|---|
| $ 2,000,000 | Advantage | $ 117391.09 ANNUALLY |

Other Changes:

**Application Page 1,** Question #1 State of Birth shall read: Delaware.

**Medical Information Clarification:** Page 3 of the Application, Part 1A Non-Medical, Question #2i shall read: September, 2005.

EG-447 10-02                                    OVER

# CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Protective Life Insurance Company | Wells Fargo Bank, N.A., as Securities Intermediary |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Jefferson Co⊕<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Minnehaha Co.<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Chad E. Kurtz<br>1200 19th St, NW  3rd Fl<br>Washington, D.C. 20036<br>Tel. (202)463-2521 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 2 U.S. Government
   Defendant

○ 3 Federal Question
   (U.S. Government Not a Party)

⊙ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR
PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ⊙ 5 | ⊙ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

**\*(If Antitrust, then A governs)\***

⊙ **E.** *General Civil (Other)*     **OR**     ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/ Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General <br> ☐ 510 Motion/Vacate Sentence <br> ☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 740 Labor Railway Act <br> ☐ 751 Family and Medical Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 440 Other Civil Rights <br> ☐ 445 Americans w/Disabilities – Employment <br> ☐ 446 Americans w/Disabilities – Other <br> ☐ 448 Education | ☒ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Diversity - 28 U.S.C. 1391          Declaratory judgment requested for insurance policy

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | DEMAND $ <br> JURY DEMAND: | Check **YES** only if demanded in complaint <br> YES ☒  NO ☐ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐  NO ☒ | If yes, please complete related case form |
|---|---|---|---|

DATE: _____07/31/2020_____   SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**  CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**  RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | |
|---|---|
| Protective Life Insurance Company <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> Wells Fargo Bank, N.A. <br><br> _____ <br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.  20-cv-2101 <br> ) <br> ) <br> ) <br> ) <br> ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Wells Fargo Bank, N.A.
101 N. Phillips Avenue
Sioux Falls, SD 57104

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____     _____

*Signature of Clerk or Deputy Clerk*

Civil Action No. 20-cv-2101

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: